## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CASSANDRIA CARLSON** and<br>**DENNIS CARLSON,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 06 C 4318 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **WAL-MART STORES, INC.,** a | ) | |
| Delaware Corporation, d/b/a **WAL-MART,** | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Defendant, Wal-Mart Stores, Inc., moves for summary judgment in this action by

Plaintiffs, Cassandria and Dennis Carlson, to recover damages for injuries allegedly suffered

when Cassandria Carlson slipped and fell in Wal-Mart's Elk Grove Village, Illinois, store.

Federal jurisdiction over the Carlsons' state-law negligence claim is based on 28 U.S.C.

§ 1332(a), because there is complete diversity of citizenship between the parties and the amount

in controversy is greater than $75,000. The parties have consented to have this Court conduct

any and all proceedings in this case, including the entry of final judgment, pursuant to 28 U.S.C.

§ 636(a) and Local Rule 73.1. Because the Court finds that there is no genuine issue of material

fact in this case and that Wal-Mart is entitled to judgment as a matter of law, Wal-Mart's motion

for summary judgment is granted.

## I. Background

On September 9, 2004, Cassandria Carlson was shopping in the automotive department of Wal-Mart's Elk Grove, Illinois, store when she slipped and fell to the floor. (Def.'s LR 56.1 Stmt., ¶ 12.)[1] She testified that at the time of the accident she was pushing a shopping cart. (*Id.* at ¶ 15.) When she made a turn into the automotive paint aisle, Ms. Carlson took two steps and then slipped when she took a third step. (*Id.* at ¶ 14.) In her answer to Wal-Mart's interrogatories, she identified the cause of her fall as a "slippery floor surface." (*Id.* at ¶ 13.) After she fell, Ms. Carlson felt the floor with her hand and it was dry. (*Id.* at ¶ 15.) There was no garbage, debris, or other substance on the floor, and there was nothing on Ms. Carlson's clothes. (*Id.*)

After she fell, Ms. Carlson approached a nearby Wal-Mart employee, Jonathan Iacullo, and told him that the automotive aisle was slippery. (Def.'s LR 56.1 Stmt., ¶ 21.) Iacullo had

---

[1] The facts recited here are based on Wal-Mart's statement of undisputed material facts. Rule 56.1(b)(3) requires the non-movant (in this case, the Carlsons) to file "a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement." Local Rule 56.1(b)(3)(B). The Local Rules further provide that "[a]ll material facts set forth in [the movant's statement] will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C). In this case, the Carlsons have failed to address each material fact in Wal-Mart's statement on a paragraph-by-paragraph basis as required by the Local Rules. Rather, they have filed a response to Wal-Mart's motion with a section entitled "Additional Facts" that contains a bullet-point list of factual assertions. This list does not specifically address Wal-Mart's statement of facts. Although the Court is entitled to demand strict compliance with the Local Rules governing summary judgment, *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004), the Court will take into account the Carlsons' factual statements to the extent that they differ from Wal-Mart's in the interest of deciding this motion on the merits.

- 2 -

been "zoning"[2] the automotive department prior to Ms. Carlson's fall and had not noticed that the floor was slippery. (*Id.* at ¶¶ 21, 22.) After he spoke with Ms. Carlson, he tested the area where she had fallen with his foot and found that it was slippery, although there was no substance on the floor and the floor was dry. (*Id.* at ¶¶ 21, 22.) There was no visual indication that the floor was slippery. (*Id.* at ¶ 22.) After Ms. Carlson left the area, Iacullo put a safety cone on the floor and paged the maintenance department. (*Id.* at ¶ 23.) After waiting for the maintenance department to respond, Iacullo decided to mop the floor himself, but this did not remedy the slipperiness of the floor. (Iacullo Dep. at 36-39.) Iacullo "had [his] own personal guess" that the slippery condition was caused by "the floor being over buffed or waxed" by the overnight cleaning crew. (*Id.* at 39.) He spoke to assistant manager Carol Raimondi about the slippery area, and they decided to use a "wax remover" (also described by Iacullo as an "adhesive spray") from the automotive department to clean the area. (*Id.* at 41-42.) After Iacullo sprayed the wax remover on the floor and let it dry, he tested the floor and found that it was less slippery. (*Id.* at 44.) Iacullo never wiped the spray off of the floor. (*Id.*)

After speaking with Iacullo, Ms. Carlson proceeded to the front of the store, where she encountered customer service manager Samantha Jiacomin and informed her that the floor in the automotive department was slippery. (Def.'s LR 56.1 Stmt., ¶ 18.) Jiacomin went to the automotive department to inspect the area where Ms. Carlson fell and found that it was slippery, although there was no substance on the floor and there was no difference in the area's appearance. (*Id.* at ¶ 19.) Jiacomin reported Ms. Carlson's slip and fall to Carol Raimondi. (*Id.*

---

[2] "Zoning" is a sales-floor activity that involves traveling the aisles of a given department and ensuring that the merchandise is arranged properly and that the floor is clean and clear of debris. (*See* Iacullo Dep. at 75.)

at ¶ 20.) Raimondi also inspected the area where Ms. Carlson fell and found no evidence of any substance on the floor. (*Id.*) Finally, Dennis Carlson, Ms. Carlson's husband, received a call from his wife stating that she had fallen and was in a lot of pain. (Dennis Carlson Dep. at 5.) Mr. Carlson went to the Wal-Mart to pick up his wife. (*Id.* at 7.) When he touched the floor where his wife had fallen, Mr. Carlson found that it was slippery. (Def.'s LR 56.1 Stmt., ¶ 17.) The floor did not appear any different from the surrounding area; it was dry and there was no substance on it. (*Id.*)

On July 5, 2006, Cassandra and Dennis Carlson filed a two-count complaint against Wal-Mart in the Circuit Court of Cook County. Count One alleges that Wal-Mart's negligence caused the floor to be unreasonably dangerous, resulting in Ms. Carlson's injuries. Count Two is a claim by Dennis Carlson for loss of consortium. Wal-Mart removed the case to federal court on August 10, 2006, pursuant to 18 U.S.C. §§ 1441 and 1446, based on diversity of citizenship. Wal-Mart now moves for summary judgment.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when, after construing all the facts of record in the light most favorable to the nonmoving party, the Court finds that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" when, under the relevant legal standard, its existence or non-existence could impact the ultimate disposition of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, the Court will

- 4 -

grant a motion for summary judgment when "a rational trier of fact could not find for the non-moving party." *Williams v. OSI Educ. Svcs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (quoting *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).). A party cannot avoid summary judgment with mere pleadings or allegations; rather, the non-movant must rely on "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chi.*, 496 F.3d 645, 651 (7th Cir. 2007).

## B. Application

The parties agree that Illinois law governs this case. Under Illinois law, "[t]he essential elements of a cause of action based on common-law negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury caused by that breach." *Judge-Zeit v. General Parking Corp.*, 875 N.E.2d 1209, 1215, 314 Ill. Dec. 922, 928 (Ill. App. Ct. 2007) (internal quotes omitted). In the case of a store, such as Wal-Mart, that invites the public in to do business, "[t]he operator . . . owes his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees." *Pageloff v. Gaumer*, 365 Ill. App. 3d 481, 483, 849 N.E.2d 1086, 1088 (2006). In this case, there is no real dispute that Wal-Mart owed a duty of care to Ms. Carlson as an invitee or that Ms. Carlson suffered injuries as a result of falling in Wal-Mart's store. The dispositive issue, therefore, is breach of duty: the Carlsons can avoid summary judgment only if there is a genuine issue of fact as to whether Wal-Mart breached its duty of care to Ms. Carlson.

- 5 -

Illinois courts have elaborated a specific rule for slip and fall cases where an injured invitee alleges that a business has breached its duty of care:

> A business owner breaches its duty to an invitee who slips an a foreign substance if (1) the substance was placed there by the negligence of the proprietor or (2) [the proprietor's] servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered.

*Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063, 753 N.E.2d 1007, 1010 (2001) (internal quotes omitted). Under this standard, Wal-Mart is entitled to a judgment in its favor unless the Carlsons can show competent evidence that could support a finding that Wal-Mart or one of its employees negligently placed a substance on the floor, causing Ms. Carlson's fall, or that Wal-Mart or its employees knew or should have known in the exercise of ordinary care that there was a slippery substance on the floor.

### 1. There is no evidence of a foreign substance on the floor where the fall occurred.

In this case, there are depositions from five witnesses who were present at the time of Ms. Carlson's fall or shortly thereafter and who inspected the area of the floor where Ms. Carlson slipped: Ms. Carlson, Mr. Carlson, Jonathan Iacullo, Carol Raimondi, and Sandra Jiacomin. As discussed above, each of these witnesses testified that the area was "slippery." (Def.'s LR 56.1 Stmt. at ¶¶ 13, 17, 19, 20, 21.) However, the testimony of all witnesses is consistent in stating that there was no substance on the floor that they could see or feel. (*Id.* at ¶¶ 15, 17, 19, 20, 21, 22.) While Jonathan Iacullo testified that he sprayed wax remover on the area, he also testified that he never wiped it up after it dried. (Iacullo Dep. at 41-44.) Therefore, there is no evidence,

expert or otherwise, that any reduction in the floor's slipperiness was necessarily the result of wax having been removed, since the reduction in slipperiness could have been the result of the sprayed liquid drying on the floor or the adhesive quality of the liquid itself, which Iacullo referred to in his deposition as both "wax remover" and "adhesive spray." (*Id.* at 42, 43.) Taking the record as a whole, there is simply no evidence to show that there was a substance on the floor at the time that Ms. Carlson fell.

## 2. There is no evidence that the floor was buffed or waxed negligently.

Under Illinois law, merely waxing or polishing a floor is not negligent; rather, the plaintiff must show that the defendant was negligent in the choice of waxing materials or in the application of the materials. *See, e.g., Lucker v. Arlington Park Race Track Corp.*, 142 Ill. App. 3d 872, 874, 492 N.E.2d 536, 538 (1986); *Dixon v. Hart*, 344 Ill. App. 432, 436, 101 N.E.2d 282, 284 (1951). At oral argument on December 17, 2007, the Carlsons' attorney argued that summary judgment was inappropriate in this case because there was evidence indicating that the slippery area on the floor of the automotive aisle was the result of negligent waxing and/or buffing by Wal-Mart's employees, specifically the overnight cleaning crew. In support of this theory, the Carlsons point to Jonathan Iacullo's deposition testimony, in which he states that he had his "own personal guess" that the floor being slippery "might have had to have been done [sic] with the floor being over buffed or waxed from overnight." (Iacullo Dep. at 39.)

However, it is clear that Iacullo's testimony about the connection between the overnight cleaning crew's activity and the condition of the floor is merely a guess. Iacullo testified that he

could not recall ever seeing areas within the store that were slippery as a result of waxing or buffing of the floor. (Iacullo Dep. at 39.) He could not recall ever having seen the overnight crew wax or buff the floor in such a way that wax was left behind, and stated that he would not know what improper buffing looked like. (*Id.* at 72.) Iacullo stated that he had no actual knowledge regarding whether the floor had been improperly waxed or buffed. (*Id.* at 73.) Aside from Iacullo's single, offhand remark about improper waxing or buffing, which he labeled a "guess" and as to which he admitted that he had no direct knowledge, there is no evidence to show when the floor was waxed, if it had been waxed at all, or that the waxing or buffing was done negligently.

As discussed above, it is well established that a party seeking to avoid summary judgment must show that there is a genuine issue of material fact by relying on evidence of a type that would be admissible at trial. *Lewis,* 496 F.3d at 651. Federal Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Iacullo's testimony demonstrates that his statement regarding waxing and buffing is, as he stated, a "guess." Iacullo's statement is a product of speculation rather than any knowledge of the activities of the overnight crew or the signs of improper buffing. It is not based on personal knowledge and would not be admissible at trial. Therefore, there is no competent evidence to suggest that Wal-Mart or its employees were negligent in waxing and buffing the floor or in their choice of materials.

### 3.    "Slipperiness" alone cannot support a finding of negligence.

The only support the Carlsons have for their claim that Wal-Mart was negligent is the undisputed testimony of all the witnesses that the floor was "slippery." This evidence does not help them, as Illinois courts have held that "subjective verbal characterizations that a floor is slippery, without more, continue to remain insufficient proof that a floor was negligently maintained." *Lucker*, 142 Ill. App. 3d at 876, 492 N.E.2d at 539. This is because "[s]uch statements are 'hopelessly lacking in precision of meaning' and do not provide a basis for balancing the owner or occupier's conduct against the applicable standard of care." *Magallon v. The Limited Stores, Inc.*, No. 86 C 9809, 1988 WL 92695, at *2 (N.D. Ill. August 31, 1988) (quoting *Rarus v. J.C. Penny*, 39 Ill. App. 2d 42, 48, 187 N.E.2d 529, 531 (1963).). With no competent evidence that there was any substance on the floor or that the floor was waxed negligently, the Carlsons have only the testimony that the floor was subjectively "slippery" to fall back on. This testimony is insufficient as a matter of law to support a finding of negligence.

### 4.    There is no evidence that Wal-Mart knew or should have known of the slippery condition.

Although there is no evidence that Wal-Mart negligently created the slippery condition that caused Ms. Carlson's fall, Wal-Mart may still be liable if its employees knew of the dangerous condition or if Wal-Mart's employees should have discovered the condition in the exercise of reasonable care but did not. *See Pavlik*, 323 Ill. App. 3d at 1063, 753 N.E.2d at 1010. There is no evidence that the Wal-Mart employees who dealt with Ms. Carlson in the aftermath of her fall—Jonathan Iacullo, Samantha Jiacomin, and Carol Raimondi—actually knew about the

slippery area where Ms. Carlson fell until after she told them about her accident. (*See* Def.'s
LR 56.1 Stmt. ¶¶ 18, 20, 24 (paraphrasing the employees' testimony that they first learned of the
slippery condition when approached by Ms. Carlson).)

Contrary to the Carlsons' assertion, Jonathan Iacullo never "admitted that 'they' knew
about this area of slipperiness prior to plaintiff's fall but couldn't do anything about it short of
changing out the tiles." (Pls.' Br. at 12.) Rather, Samantha Jiacomin testified that, when she
spoke to Iacullo some time after the accident, he said that "they knew it was there and that it was
something they like I guess tried to fix." (Jiacomin Dep. at 22.) It was Jiacomin, not Iacullo,
who speculated that "it was one of those things . . . where you probably had to fix it by replacing
the tile I think." (*Id.* at 22-23.) Jiacomin's statement about replacing the tiles is mere
speculation, while the only reasonable inference from Iacullo's statement that "they knew it was
there," taken in context, is that Iacullo already knew about the slippery spot when Jiacomin asked
him about it because he was the first person Ms. Carlson approached after she fell.

There is also no evidence that Wal-Mart should have known about the slippery spot in the
exercise of ordinary care. First, four of the witnesses who examined the area where Ms. Carlson
fell, including both of the Plaintiffs, testified that the area did not look any different from the
non-slippery portions of the aisle. (Def.'s LR 56.1 Stmt. at ¶¶ 15, 17, 19, 22.) According to
Ms. Carlson, Carol Raimondi, and Jonathan Iacullo, there was no debris or spilled liquid in the
area. (*Id.* at ¶¶ 15, 20, 22.) There is no evidence to suggest that the slippery area was detectable
by any means other than physically sliding a hand or foot across it. At the time of Ms. Carlson's
fall, Jonathan Iacullo was actively "zoning" the automotive department, including the aisle in
which Ms. Carlson fell. (*Id.* at ¶ 21.) One of his duties while zoning was to ensure that there

was no debris or other dangerous condition in the aisles of the automotive department. (Iacullo Dep. at 75.) Therefore, all of the evidence suggests that the area where Ms. Carlson fell, while slippery, was not detectable by visual inspection and that Wal-Mart was exercising reasonable care to prevent such accidents by assigning an employee to walk the aisles of the automotive department scanning for hazardous conditions. This is not a case, as the Carlsons' brief argues, where the defendant has looked with an "unseeing eye" at a risk that should have been apparent, or failed to look at all.

The Carlsons' final argument is that Wal-Mart's policy of having its employees scan the aisles for hazards, coupled with Wal-Mart's "prior habitual use of warning cones" to warn customers of dangerous areas in the store, creates an inference that Wal-Mart was negligent in not placing a cone over the area where Ms. Carlson fell. Neither law nor logic supports this argument. First, the Supreme Court of Illinois has rejected the argument that a defendant's internal policies, such as Wal-Mart's policy of scanning the aisles and using safety cones, expand the defendant's legal duties beyond those normally imposed by the law. *See Rhodes v. Illinois Cent. Gulf R.R.*, 172 Ill.2d 213, 238-39, 665 N.E.2d 1260, 1272-73 (1996). Second, Jonathan Iacullo was actively scanning the aisles of the automotive department for hazards when Ms. Carlson fell, and all of the evidence indicates that the slippery area could not be detected by visual inspection. It is hard to see how Wal-Mart could have placed a warning cone over a hazard it did not know of and had no reason to know of. The Carlsons argue that Wal-Mart "knew or should have known that its floor had the potential to be slippery for whatever reason." This may be true, but knowledge of an abstract potential danger is not the same as knowledge of actual danger in a specific place at a specific time. Adopting the Carlsons' reasoning would

require Wal-Mart to cover every inch of its floor with warning cones in order to avoid liability for injuries caused by undetectable potential risks. The law does not require this; opening one's doors to the public creates a duty of care but does not make the owner or occupier "an absolute insurer of the safety of an invitee" for all harm, no matter how unavoidable. *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894, 900, 735 N.E.2d 758, 763 (2000).

To summarize, there is no evidence that there was any substance on the floor where Ms. Carlson fell. There is no competent evidence that the floor was improperly waxed or buffed, or that it was waxed or buffed at all. Although the floor was "slippery," this on its own is insufficient as a matter of law to support a finding of negligence on Wal-Mart's part. There is no evidence that Wal-Mart knew or should have known that the area where Ms. Carlson slipped was slippery prior to her fall. Because the evidence of record, viewed in the light most favorable to the Carlsons, shows that there is no genuine issue of material fact as to Wal-Mart's negligence, Wal-Mart is entitled to summary judgment.

### III. Conclusion

For the reasons discussed above, Wal-Mart's motion for summary judgment is granted.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
Dated: December 21, 2007.                    United States Magistrate Judge

Copies have been mailed to:

MARK E. McNABOLA, Esq.
Cogan & McNabola, P.C.
55 West Wacker Drive
Suite 900
Chicago, IL 60601

CRAIG A. CAPPAS, Esq.
JENNIFER M. REDDIEN, Esq.
SmithAmundsen, L.L.C.
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601

Attorney for Plaintiffs

Attorneys for Defendant